IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| Tyganda Gilmore, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:14cv1396 (LMB/TCB) |
| ) | |
| Charles E. Samuels, Jr., et al., ) | |
| Defendants. ) | |

F I L E D
APR 30 2015
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

Tyganda Gilmore, a federal inmate proceeding pro se, has filed a civil rights action, pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) ("Bivens"), which extends § 1983 liability to federal officials. Plaintiff seeks monetary damages for a number of occurrences during his former incarceration in the Eastern District of Virginia, at FCI Petersburg Medium.[1] Plaintiff has applied to proceed in forma pauperis in the action. After reviewing plaintiff's amended complaint, the claims against the defendants will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.[2]

---

[1] On January 8, 2015, plaintiff notified the Court that he had been transferred to Beckley FCI in West Virginia. [Dkt. 9]

[2] Section 1915A provides:

> (a) **Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
> (1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or

1

## I. Background

Plaintiff commenced this action in October, 2014 by filing a standardized form complaint for actions brought pursuant to 42 U.S.C. § 1983. [Dkt. 1] Because plaintiff is in federal custody and seeks to sue federal officials, his claims appropriately are construed as being brought pursuant to Bivens. Although plaintiff used a standardized form complaint, his allegations were disjointed and in most instances impossible to follow. Accordingly, plaintiff was directed in an Order dated October 29, 2014 to particularize and amend his allegations in an amended complaint. [Dkt. 3] Plaintiff was given detailed instructions on the requirements for stating a claim under Bivens, as well as on the manner in which the amended complaint should be structured. He was provided with a standardized form Bivens complaint, and was allowed thirty (30) days within which to file an amended complaint pursuant to the instructions he received.

Plaintiff filed an amended complaint on November 24, 2014. [Dkt. 6] Despite the efforts just described, the amended complaint is scant, if any, improvement over the original. Plaintiff's allegations are difficult to follow and at times at least border on the fanciful. His overarching theme appears to be that the defendants were all involved in a plot to murder him, and he also includes allegations of various additional wrongs by some of the defendants. The named defendants are: (1) Charles E. Samuels, Jr., Director of the Federal Bureau of Prisons ("BOP"); (2) E. D. Wilson, Warden of FCI Petersburg; (3) Mr. Engel, Associate Warden of FCI Petersburg; (4) the Warden of FCI Butner; (5) Ms. Dawson, Special Housing Captain; (6) Howard, Special Housing Lieutenant; (7) K. F. Kiddy, Unit Manager; (8) Mrs. W. Bennet, D.H.O. Hearing Officer; and (9) Mr. Katta, "Medical/Dental." Plaintiff seeks relief in multiple

---

(2) seeks monetary relief from a defendant who is immune from such relief.

2

forms, including monetary and injunctive damages, declaratory relief, delivery of an order of commitment, criminal charges and contempt orders against all defendants, a reduction in his security custody level, and the appointment of counsel. Am. Compl. at 5.

## II. Standard of Review

In reviewing a complaint pursuant to § 1915A, a court must dismiss a prisoner complaint that is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1). Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998). Thus, the alleged facts are presumed true, and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, id., and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level...". Twombly, 550 U.S. at 55. Moreover, a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S. Ct. at 1949-1950.

Courts may also consider exhibits attached to the complaint. United States ex rel. Constructors, Inc. v. Gulf Ins. Co., 313 F. Supp. 2d 593, 596 (E.D. Va. 2004), cited with

3

approval in Anheuser-Busch v. Schmoke, 63 F.3d 1305, 1312 (4th Cir.1995)). Where a conflict exists between "the bare allegations of the complaint and any attached exhibit, the exhibit prevails." Gulf Ins. Co., 313 F. Supp.2d. at 596 (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir.1991)).

### III. Analysis

A. The Claims Are Not Exhausted

There are a number of problems with plaintiff's amended complaint. First, his claims do not appear to be exhausted. Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). Indeed, under the PLRA courts have no authority to waive the exhaustion requirement. See Graham v. Gentry, 413 Fed. App'x 660, 663 (4th Cir. Feb. 18, 2011). Moreover, the PLRA requires "proper" exhaustion, which demands "compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90-91, 93. The Supreme Court expressly has refused to recognize a futility exception to the PLRA's exhaustion requirement. Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001) ("[W]e will not read futility or other exceptions into statutory exhaustion requirements [of the PLRA]".); see also, Reynolds v. Doe, 431 Fed. App'x 221, 222 (4th Cir. May 24, 2011)("Exhaustion of administrative remedies is mandatory, even where the inmate claims that exhaustion would be futile.")

For a federal inmate such as Gilmore, BOP regulations 28 C.F.R. § 542.10 et seq. provide a multi-layered exhaustion process. Under BOP regulations, an inmate first is required to

attempt to resolve the problem informally, but in the event this fails, the inmate must then file a formal written Administrative Remedy Attempt within twenty days of the incident in question. See 28 C.F.R. § 542.14(a). If the inmate is not satisfied with the response provided, he can appeal the decision first to the warden of the particular facility (Level I), then to the appropriate BOP Regional Director (Level II), and finally to the BOP General Counsel (Level III). See 28 C.F.R. §§ 542.10-542.15.

Here, in the portion of the amended complaint entitled "Grievance Procedure," plaintiff states that he filed grievances based on this complaint, but "defendant [uses] excuses to reject [his grievances] alleging too many issues on single grievance or not alleging enough fact [sic] to support investigation on grievance or misleading (info) or technical reason." Am. Compl. § III (C)(3). Plaintiff's "appeal" was denied, but he states he is still trying to exhaust his claims by sending a "sensitive complaint" to the Regional Office and a "complaint in writing" to the Director of the Bureau of Prisons. Id. § III (C)(5).[3] Taking plaintiff's statements as true, it is apparent that his attempts to grieve his current claims were not done "in compliance with [the BOP's] deadlines and other critical procedural rules." Woodford, 548 U.S. at 90-91. Therefore, the claims he raises here have not been administratively exhausted for PLRA purposes and are not federally cognizable. Woodford, 548 U.S. at 85.

B. No Supervisory Liability

Even if plaintiff were able to demonstrate the proper exhaustion of his claims, his allegations in substance fail to state a claim for which any defendant could be liable to him. First, it appears that plaintiff has named defendant Charles Samuels, Director of the BOP, as a

---

[3]Attached to the amended complaint is Rejection Notice dated October 17, 2014, informing plaintiff that his Regional Appeal was rejected because the issue he raised was not sensitive and instructing him to file a request or appeal at the appropriate level via regular procedures.

party to this action solely as the result of his supervisory positions. Specifically, plaintiff alleges that Samuels is liable to him because his employees violated plaintiff's constitutional rights, and because he failed to respond to certified correspondence in which plaintiff explained those violations. Am. Compl. at § IV.

In certain circumstances, supervisory officials may be held liable for the constitutional injuries inflicted by their subordinates. See Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (citing Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984)). This liability, however, is not premised on respondeat superior, but rather upon "recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Id. at 798 (quoting Slakan, 737 F.2d at 372-73). "[L]iability ultimately is determined 'by pinpointing the persons in the decision-making chain whose deliberate indifferent permitted the constitutional abuses to continue unchecked.'" Id. (quoting Slakan, 737 F.2d at 376). In order to establish supervisory liability under § 1983 or Bivens, there are three necessary elements:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id. at 799 (citations omitted).

Here, plaintiff has failed to allege facts to show that any of these factors were present in this case. Taken as true, the allegation that Samuels failed to respond to plaintiff's correspondence is not sufficient to render Samuels personally liable for denial of plaintiff's constitutional rights. See Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (finding that

6

defendant was not sufficiently personally involved in an allegedly unconstitutional adjustment team hearing when he received a letter from plaintiff about the hearing, but was not actually present at the hearing itself). Therefore, plaintiff's claim against Samuels will be dismissed for failure to state a claim.

C. Failure to State a Claim

Plaintiff's allegations against the remaining defendants fail to state a claim for which relief can be granted.

1) Plaintiff alleges that Associate Warden Engel looked into plaintiff's cell on September 26, 2014 and said, "Good luck with your transfer and we'll never hear from you on earth again." On September 19, 2014, Engel was "close to plaintiff [sic] cell" when he remarked, "What's that smell, it smells like a dead rotten body." Plaintiff interpreted both of these statements as death threats. Am. Compl. § IV. Plaintiff also alleges that his legal mail was not opened in his presence and instead was opened by defendants "to see about all my complaints against them." Id.

2) Plaintiff alleges that the Warden of FCI Butner is liable to him because plaintiff refused placement in general population when he arrived at Petersburg. Thereafter, "staff was in inappropriate contact with institution to have plaintiff murdered after misleading inmates on a past sexual conduct conviction in state court when plaintiff was younger." Staff at Petersburg conspired to have plaintiff transferred, and "FCI Butner was the mentioning institution and contacting that institution staff to conspiracy their motives." [Sic]. Am. Compl. §IV.

3) Warden Wilson at Petersburg allegedly had his staff taunt plaintiff about death threats and delay plaintiff's legal mail. Plaintiff also accuses Warden Wilson of trying to have him murdered by gang members or "guys with a lot of time, with nothing to lose." Am. Compl., Att.

4) Plaintiff alleges that Ms. Dawson, the Special Housing Captain at Petersburg, participated with other defendants in "misleading" and "plotting" concerning plaintiff's transfer to another location. Ms. Dawson "seem [sic] to be so directed toward FCI Butner" but plaintiff told her, "I'm not going to no Butner." On numerous occasions plaintiff "received slick talk from Dawson," and when plaintiff told her she needed to see a psychologist she responded, "Yeah I'm kind of crazy." Plaintiff also alleges that Dawson tried to "stage" him in his cell to have him murdered. Am. Compl., Att. C.

5) Plaintiff states that since his arrived at Petersburg he "briefed" defendant Special Housing Lt. Howard "like [he] was told to by special agent and other civil rights organizations." Plaintiff told Howard he would "take" an older white or black guy, apparently as a cellmate, but he wanted no young guys and no gang members, "specially guys with a lot of time and ... around my weight." Nonetheless, Lt. Howard tried to place plaintiff in a cell with "a guy with a lot of time to have plaintiff murdered." Am. Compl., Att. C.

6) Plaintiff alleges that Unit Manager Kiddy harassed and intimidated plaintiff when plaintiff declined to be released into general population. Apparently plaintiff also accuses Kiddy of threatening to "push [his] release date back," and of misleading a "violent inmate about [plaintiff's] past sexual conduct [and] state conviction." Am. Compl., Att. C.

7) Plaintiff asserts that Disciplinary Hearing Officer Bennet participated in the conspiracy and harassment against him by imposing a "high sanction" on plaintiff as part of the "plot" against him. As a result plaintiff lost good conduct time, and commissary and telephone privileges. Am. Compl., Att. C.

8) Plaintiff alleges that "Medical Dental" Mr. Katta is liable to him for "sneaking ... some kind of medicine or poison" into plaintiff's food, which caused plaintiff to lose weight and

8

become sick. Plaintiff "caught on" to "what they were doing" and was harmed by having to make numerous sick call requests. Plaintiff also requested that a tooth be pulled but "it never happened." Am. Compl., Att. C.

Among the exhibits plaintiff has filed with the amended complaint is a Request for Transfer/Application of Management Variable. It was prepared by plaintiff's case manager and signed by Unit Manager Kiddy and Warden Wilson, and sought plaintiff's transfer to "any appropriate facility" for "adjustment purposes." As the rationale for referral, the form states:

> Inmate Gilmore is a Medium security inmate with In [sic] custody. He has a projected release date of July 18, 2019, via Good Conduct Time Release. Inmate Gilmore is being referred for an Adjustment Purpose transfer due to him refusing to release to General Population at this facility since arrival on October 29, 2103. The SIS department did an Inmate Investigative Report that indicated inmate Gilmore gave no explanation but just claimed safety issues being in general population. **The SIS report concluded no specific threat existed towards Gilmore** and should be considered an Un-Verified Protective Custody case. The Unit Team is recommending inmate Gilmore be transferred to a facility appropriate for his security needs. Inmate Gilmore is a CIM case.[4]

Am. Compl., Att., emphasis added.

Plaintiff's allegations against defendants Engel, Warden of Butner, Wilson, Dawson, Howard in substance fail to state a claim for which relief can be granted. The Court finds that plaintiff has provided insufficient factual allegations to demonstrate a right to relief that rises above the speculative level, cf. Twombly, 550 U.S. at 55, and that the claims lack the facial plausibility which would allow a reasonable inference that any defendant is liable for the

---

[4]The BOP monitors and controls the transfer, temporary release and community activities of certain inmates who present special needs for management. Such inmates are known as Central Inmate Monitoring (CIM) cases and require a higher level of review for transfer, temporary release and community activities. See BOP Program Statement 5180.05.

9

misconduct plaintiff alleges. Cf. Iqbal, 129 S. Ct. at 1949. Indeed, when considered in light of the foregoing Request for Transfer, as they appropriately may be, Gulf Ins. Co., 313 F. Supp. 2d at 596, plaintiff's allegations appear to be factually frivolous, Neitzke, 490 U.S. at 328, and at least approach "the level of the irrational or the wholly incredible." Denton, 504 U.S. at 33.

## IV. Conclusion

For the foregoing reasons, the complaint will be dismissed for lack of exhaustion of administrative remedies, and in the alternative for failure to state a claim pursuant to § 1915A. Plaintiff's motion to proceed in forma pauperis will be denied as moot. An appropriate Order shall issue.

Entered this 30th day of April 2015.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge